UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


LARRY PROSSER,

                    Petitioner,

v.                                      Case No. 3:06-cv-175-J-32MCR

WALTER A. MCNEIL,
et al.,

                    Respondents.
_____

### ORDER[1]

### I. Status

Petitioner Larry Prosser, proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on February 23, 2006. Petitioner challenges a 1999 state court (Duval County, Florida) judgment of conviction for unarmed robbery with a concealed identity on the following grounds: (1) trial counsel was ineffective for failure to investigate and call alibi witnesses at the trial; (2) trial counsel was ineffective for failure to object to prosecutorial misconduct during the closing arguments; (3) trial counsel was ineffective for

_____

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the matter addressed herein and is not intended for official publication or to serve as precedent.

failure to investigate the State's witnesses; (4) the sentence was illegally enhanced; and, (5) Petitioner received an illegal sentence due to lack of proper notice.

Respondents have responded.   See Respondents' Motion to Dismiss Untimely Petition for Writ of Habeas Corpus and/or Answer to Petition for Writ of Habeas Corpus (Doc. #8) (hereinafter Response); Respondents' Response to Court's Order of June 11, 2008 (hereinafter Supplemental Response).[2]   Petitioner was given admonitions and a time frame to respond. See Court's Order to Show Cause and Notice to Petitioner (Doc. #4); Court's Orders (Docs. #10, #12, #18). Petitioner has replied.   See Petitioner's Traverse (hereinafter Reply) (Doc. #13); Petitioner's Supplemental Brief (hereinafter Supplemental Brief) (Doc. #21).  This case is now ripe for review.

## II. Procedural History

Petitioner was tried by a jury and found guilty of robbery with a weapon and concealed identity.  Ex. A at 75-89; Ex. B, Transcript of the Jury Trial Proceedings (hereinafter Tr.) at 598. On November 21, 1997, Petitioner was sentenced, as a habitual felony offender, to forty-two years of incarceration with a thirty-year minimum mandatory provision.  Ex. A at 75-89.

---

[2] The Court will hereinafter refer to Respondents' exhibits as "Ex."

On appeal, the parties filed briefs, and the issues raised are as follows: (1) did the trial court err by denying his motion for judgment of acquittal on an armed robbery charge where appellant claimed that the State failed to prove appellant possessed a firearm, and (2) whether the Prison Releasee Reoffender Act violates the separation of powers clause of the state constitution. Ex. C; Ex. D; Ex. E.  On September 1, 1999, the appellate court stated that the evidence was insufficient to establish that the defendant or his accomplice was armed during the robbery.  Prosser v. State, 742 So.2d 400 (Fla. 1st DCA 1999) (per curiam); Ex. F. Thus, the appellate court reversed the judgment of conviction for robbery while armed with a weapon and while his identity was concealed and remanded for entry of a judgment of conviction for unarmed robbery with a concealed identity and for resentencing of Petitioner in accordance with the corrected judgment.  Id.  The court affirmed as to the issue concerning the Prison Releasee Reoffender Act.  Id.  The mandate was issued on September 17, 1999. Ex. G.

Upon remand, Petitioner was resentenced, on November 16, 1999, to a term of twenty-four years of incarceration, as a habitual felony offender, for the conviction of unarmed robbery with a concealed identity. Ex. H; Ex. I. Petitioner appealed (Ex. J) and filed a brief. Ex. K. On August 21, 2000, the appellate court per curiam affirmed without issuing a written opinion.  Prosser v.

State, 810 So.2d 926 (Fla. 1st DCA 2000); Ex. L.  The mandate was issued on September 6, 2000.  Ex. M.

On or about October 9, 2000, Petitioner filed a *pro se* motion to correct illegal sentence.  Ex. N.  On November 1, 2000, the court denied the motion to correct illegal sentence.  Ex. O.

On or about July 27, 2001, Petitioner filed a *pro se* motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a).  Ex. P at 1-4.  On or about November 4, 2001, Petitioner filed a *pro se* amended motion to correct illegal sentence.  Id. at 5-7.  On or about December 2, 2001, Petitioner filed a *pro se* motion for post conviction relief, raising the following claims: (1) ineffective assistance of counsel for failure to investigate, develop and call alibi witnesses for the defense; (2) ineffective assistance of counsel for failure to object to prosecutorial misconduct in the State's closing argument; (3) ineffective assistance of counsel for failure to properly investigate the State's witnesses to develop evidence of a motive to fabricate testimony; and (4) ineffective assistance of counsel based on the cumulative effect of counsel's errors, as argued in issues one through three.  Id. at 8-19.

An evidentiary hearing was conducted in state court on grounds one and three.  Id., Exhibits F and G, at 92-140, Transcript of the Evidentiary Hearing (hereinafter EH Tr.).  On May 30, 2003, the court denied Petitioner's motions to correct illegal sentence and the motion for post conviction relief.  Id. at 23-225.

4

Petitioner appealed, and the parties filed briefs. Ex. Q; Ex. R; Ex. S; Ex. T. On June 11, 2004, the appellate court per curiam affirmed without issuing a written opinion. <u>Prosser v. State</u>, 875 So.2d 1245 (Fla. 1st DCA 2004); Ex. U. The mandate was issued on July 7, 2004. Ex. V.

On or about August 31, 2004, Petitioner filed a *pro se* motion for post conviction relief and/or motion to correct illegal sentence. Ex. W. On or about January 6, 2005, Petitioner filed a *pro se* amended motion for post conviction relief and/or motion to correct illegal sentence, claiming that his sentence was illegally enhanced based upon the use of a mask, and that he received an illegal sentence where the State failed to give him the proper notice of intent to seek a habitual offender sentence. Ex. X. On November 29, 2005, the court denied the motions. Ex. Y. Petitioner had thirty days to file an appeal.

On or about December 13, 2006, Petitioner filed a petition for belated appeal. Ex. BB. The State responded on March 12, 2007. Ex. CC. On May 21, 2007, the appellate court granted his petition for a belated appeal. <u>Prosser v. State</u>, 956 So.2d 547 (Fla. 1st DCA 2007); Ex. DD. The mandate was issued on June 18, 2007. Ex. EE.

On February 5, 2008, the appellate court per curiam affirmed the denial of the amended motion for post conviction relief and/or motion to correct illegal sentence (Ex. X) without issuing a

written opinion.  <u>Prosser v. State</u>, 974 So.2d 390 (Fla. 1st DCA 2008).

The Petition (Doc. #1) was filed in this Court on February 23, 2006; however, giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to the prison authorities for mailing to this Court (February 22, 2006).  <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988).  Thus, the Petition is timely filed within the one-year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d); Supplemental Response at 1-5; Response at 3-5; Reply; Supplemental Brief.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  The pertinent facts of the case are fully developed in the record before the Court.  <u>Smith v. Singletary</u>, 170 F.3d 1051, 1054 (11th

Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted.

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication
> resulted in a decision that was:  "(1) . . .
> contrary to, or involved an unreasonable[3]

_____

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher

7

> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or (2) . . . based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding." 28 U.S.C. § 2254(d);
> <u>Marquard</u>, 429 F.3d at 1303. The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision. <u>See</u> <u>Carey v. Musladin</u>,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing <u>Williams v. Taylor</u>, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466
> F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." <u>Schriro</u>, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the

---

threshold." <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1939 (2007) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).

claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).  <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064.  Second, the defendant must show that counsel's deficient performance prejudiced him.  <u>Id</u>.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

> proceeding would have been different.  A
> reasonable probability is a probability
> sufficient to undermine confidence in the
> outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir.

2007).  "Establishing these two elements is not easy: 'the cases in

which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between.'" Van

Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir.

2002) (per curiam) (citations and footnote omitted), cert. denied,

537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain
> principles and presumptions to guide our
> review of ineffectiveness claims under the
> flexible, case-specific standards of
> Strickland.  We engage only in a "highly
> deferential" review of counsel's performance
> and "indulge a strong presumption that
> counsel's conduct falls within the wide range
> of reasonable professional assistance; that
> is, the defendant must overcome the
> presumption that, under the circumstances, the
> challenged action might be considered sound
> trial strategy." Strickland, 466 U.S. at 689,
> 104 S.Ct. at 2065 (quotation omitted).  As a
> result of this presumption, a petitioner must
> show "that no competent counsel would have
> taken the action that his counsel did take."
> Chandler v. United States, 218 F.3d 1305, 1315
> (11th Cir. 2000) (en banc).  Thus, "where the
> record is incomplete or unclear about
> [counsel]'s actions, we will presume that he
> did what he should have done, and that he
> exercised reasonable professional judgment."
> Id. at 1314 n. 15 (quoting Williams v. Head,
> 185 F.3d 1223, 1228 (11th Cir. 1999)).
> Moreover, because the standard is an objective
> one, trial counsel's admission that his

> performance was deficient "matters little."
> Id. at 1315 n.16.  We must also avoid "the
> distorting effects of hindsight" and evaluate
> the reasonableness of counsel's performance
> from the perspective of counsel at the time
> the acts or omissions were made.  Strickland,
> 466 U.S. at 689, 104 S.Ct. at 2065.

Jennings v. McDonough, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that trial counsel was ineffective for failure to investigate and call alibi witnesses at the trial.  Specifically, Petitioner states that he informed his defense counsel (Ms. Waffa Hanania) that Clarence Davenport[4] (a/k/a Little Clarence) and Little Reed were available as alibi witnesses and, if called, they would have testified that Petitioner could not have committed the crime because he was in their presence at the Golden Sands Motel when the alleged robbery occurred.  Petition at 4.

As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.  An evidentiary hearing was conducted in state court.  In denying this ground on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

---

[4] Petitioner refers to Little Clarence as Clarence Davenport in the Petition; however, Little Clarence is also referred to as Clarence Lembrooks (EH Tr. at 99) and Clarence Limbrick.  Tr. at 473.

In ground one, Defendant asserts that counsel rendered ineffective assistance by failing to investigate and call alibi witnesses. Specifically, Defendant contends that witnesses, Clarence Davenport, "Little Reed," Tyra Banks, and Joseph Smith would have testified that Defendant was in room 108 of the Golden Sands Motel during the time of the charged offense. During part one of the evidentiary hearing,[5] Defendant testified that when he met with his former trial counsel, Ms. Waffa Hanania, he told her that he was at the Golden Sands Motel during the time of the charged offense. (Exhibit "F," page 7.) Defendant testified that Ms. Hanania never informed him about calling alibi witnesses until the trial came closer. (Exhibit "F," page 7.) Defendant testified that Ms. Hanania never explained to him why she was not going to call alibi witnesses. (Exhibit "F," pages 7-8.)

During part of two [sic] the evidentiary hearing, Ms. Hanania testified that Defendant stated he had witnesses and provided her with the names "Little Clarence" and "Little Reed," but was never able to provide her with full names. (Exhibit "G," page 8-9.) Ms. Hanania testified that she attempted to find these individuals by going to the Golden Sands Motel and asking State witnesses during their depositions. (Exhibit "G," pages 9-10.) Ms. Hanania testified that during Joseph Smith's deposition, he stated that he did not know the real names of "Little Clarence" or "Little Reed" (Exhibit "G," pages 9-10.) Ms. Hanania testified that Joseph Smith stated "that the only time he had seen Mr. Prosser on the evening before the morning of this incident was about 11:30 p.m. the evening prior when he was coming off work and he saw Mr. Prosser standing in the area of First and Fifth." (Exhibit "G," page 10.) Ms. Hanania testified

---

[5] The evidentiary hearing was bifurcated. Petitioner testified on March 5, 2003, and Ms. Hanania testified on May 1, 2003. See EH Tr.

that Joseph Smith stated that "Little Clarence" needed assistance in obtaining a hotel room and so they got Tyra Bank to produce the required identification for the room and then she left. (Exhibit "G," pages 10-11.) Ms. Hanania testified that she felt, based upon Joseph Smith's depositional testimony, neither he nor Ms. Bank was a qualified alibi witness. (Exhibit "G," pages 10-11.) Ms. Hanania testified that she did interview Tyra Banks and Ms. Bank stated the same thing as Joseph Smith. (Exhibit "G," page 15.) Finally, Ms. Hanania testified that "Little Clarence" and "Little Reed" were never found. (Exhibit "G," pages 15-16.)

This Court specifically finds that the testimony of Ms. Hanania was more credible and more persuasive than Defendant's allegations and testimony. <u>Laramore v. State</u>, 699 So.2d 846 (Fla. 4th DCA 1997). Further, this Court finds that counsel's decision not to present the proposed call [sic] alibi witnesses amounted to trial strategy and therefore is not subject to a claim of ineffective assistance of counsel. (Exhibit "D,"[6] pages 6-9, 24-26.) <u>Remetta v. Dugger</u>, 622 So.2d 452 (Fla. 1993); <u>Gonzales v. State</u>, 691 So.2d 602, 603 (Fla. 4th DCA 1997) ("Tactical or strategic decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, this Court finds that Defendant has failed to establish error by counsel or prejudice to his case.

Ex. P at 26-27.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court

---

[6] <u>See</u> EH Tr.

13

decisions.   The Court must next consider the "contrary to" and "unreasonable application" components of the statute.   "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."   Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.   Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit.   After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner.   See Ex. P at 27.   The Court notes that credibility determinations are questions of fact.   See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations).   Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence.   See

Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Given the trial court's credibility determination, it is clear that Petitioner's claim is wholly unsupported, and therefore the claim must fail.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that counsel's performance was reasonable is even stronger since she is an experienced criminal defense attorney.[7]  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. 668, 690 (1984).  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here,

---

[7] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Ms. Waffa Hanania was admitted to the Florida Bar in 1991. See http://www.floridabar.org.  At the time of Petitioner's criminal trial in 1997, she had practiced criminal law for approximately six years as an Assistant Public Defender.  EH Tr. at 120-21.  The focus of her career has been criminal defense law. Id. at 121.

chose.  <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).  Here, counsel's performance was not deficient.

At the evidentiary hearing, Ms. Hanania recalled that Petitioner had mentioned both Clarence Davenport and Little Reed. EH Tr. at 122.  However, she explained that she attempted to find Little Clarence and Little Reed, but was unable to locate either person.  <u>Id</u>. at 123, 129.  She had interviewed both Ms. Banks and Mr. Smith and had learned that they knew Little Clarence and Little Reed from the neighborhood, but did not have any additional information about them.  <u>Id</u>. at 128-30.  She explained:

> Again, they knew them just casually from the neighborhood.  Mr. Smith indicated that he had just run into "Little Clarence" just on the street that evening as he was driving home from work.  They did not give me any additional information and, quite frankly, did not want to be involved.

<u>Id</u>. at 130.  She concluded:

> I didn't know what they were going to say at that point and I don't think it's a good idea to list witnesses when I don't know what their statements are going to be and whether or not they would, in fact, have corroborated Mr. Prosser's statements.

<u>Id</u>. at 129.  Ms. Hanania made reasonable efforts to locate these witnesses, but could not find them.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the

16

assistance that Petitioner has alleged she should have provided. Thus, the ineffectiveness claim is without merit.

## B. Ground Two

As ground two, Petitioner claims that trial counsel was ineffective for failure to object to prosecutorial misconduct during the closing arguments.  Specifically, Petitioner claimed four separate instances of prosecutorial misconduct: (1) comments concerning Petitioner's failure to call alibi witnesses; (2) comments asking the jury to convict Petitioner based on sympathy for the victims; (3) comments characterizing Petitioner as evil or sinister and his defense as "bull" or a "cockamamie story"; and (4) comments shifting the burden of proof.  Petition at 5-5B.

As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.  This claim was not addressed at the evidentiary hearing.  In denying this ground on the merits, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In ground two, Defendant asserts that counsel rendered ineffective assistance by failing to object to prosecutorial misconduct based upon the State's closing argument. This Court notes that wide latitude is permitted in arguing to a jury. <u>Thomas v. State</u>, 326 So.2d 413 (Fla. 1975); <u>Spencer v. State</u>, 133 So.2d 729 (Fla. 1961). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. <u>Spencer</u>. The standard for review of prosecutorial misconduct is whether "the error committed was so prejudicial as to vitiate the entire trial." <u>Cobb v. State</u>, 376 So.2d 230, 232 (Fla. 1979).

17

> Jones v. State, 612 So.2d 1370 (Fla. 1993);
> State v. Murray, 443 So.2d 955 (Fla. 1984).
>
> This Court, after reviewing the State's closing argument, finds that the comments by the prosecutor did not rise to the level of vitiating the entire trial. (Exhibit "H," pages 493-508, 541-573.) Moreover, the comments by the prosecutor did not "inflame the minds and passions of the jurors so that their verdict reflect[ed] an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law." Jones. Therefore, this Court finds that Defendant has failed to establish prejudice to his case.

Ex. P at 27-28.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## C. Ground Three

As ground three, Petitioner claims that trial counsel was ineffective for failure to develop evidence that Corporal Rich Ward had a motive to fabricate evidence against Petitioner.  According to Petitioner, there was animosity between Corporal Ward and Petitioner, stemming from a prior unrelated arrest in which the State declined to prosecute.  Petitioner believes that his trial counsel rendered deficient performance because she failed to present evidence that would have shown the hostile relationship between Ward and Petitioner, thereby calling into question the credibility of Ward's testimony.  Petition at 7-7A.

As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.  An evidentiary hearing was conducted in state court.  In denying this ground on the merits, the trial court identified the two-prong _Strickland_ ineffectiveness test as the controlling law and stated in pertinent part:

> In ground three, Defendant asserts that counsel rendered ineffective assistance by failing to investigate and present evidence at trial that Corporal Rich Ward fabricated his testimony[8] based upon a prior negative relationship with Defendant. During part one of the evidentiary hearing, Defendant testified that Ms. Hanania explained to him that it was in his best interest not to discuss his prior problems with Corporal Ward. (Exhibit "F," page 11.) Defendant testified that he wanted Ms. Hanania to bring out that Corporal Ward previously knew Defendant and

---

[8] _See_ Tr. at 290-312.

Corporal Ward's testimony that he did not know Defendant was inaccurate. (Exhibit "F," pages 11-13.) Finally, Defendant testified that he wanted the jury to know that he had a prior record and he had no problem with the jury knowing that he was a convicted felon. (Exhibit "F," page 20-21.)

During part two of the evidentiary hearing, Ms. Hanania testified that Defendant believed there was animosity between himself and Corporal Ward stemming from a prior arrest of Defendant for Battery on a Law Enforcement Officer against Corporal Ward that the State declined to prosecute. (Exhibit "G," page 13.) Ms. Hanania testified that Corporal Ward stated that his contact with Defendant was cordial and Defendant was cooperative. (Exhibit "G," pages 13-14.) Ms. Hanania testified that since Defendant chose not to testify, there was no way to corroborate the alleged animosity between Defendant and Corporal Ward, she did not see an advantage in presenting this information to the jury. (Exhibit "G," pages 13-14.) Ms. Hanania testified that she did not believe that Defendant had an objection to leaving this information out of the trial. (Exhibit "G," page 14.) Ms. Hanania testified that she felt the benefit of the jury not finding out that Defendant had previously been arrested by Corporal Ward outweighed impeaching Corporal Ward. (Exhibit "G," page 20.)

This Court specifically finds that the testimony of Ms. Hanania was more credible and more persuasive than Defendant's allegations and testimony. <u>Laramore</u>. Further, this Court finds that counsel's decision not to [question] Corporal Ward regarding his prior contact or relationship with Defendant amounted to trial strategy and therefore is not subject to a claim of ineffective assistance of counsel. (Exhibit "D," pages 6-9, 24-26.) <u>Remetta</u>; <u>Gonzales</u>. Accordingly, this Court finds that Defendant has failed to establish error by counsel or prejudice to his case.

20

Ex. P at 28-29.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner. See Ex. P at 29. Credibility determinations are questions of fact,[9] and Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. at 340. Given the trial court's

---

[9] See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations).

21

credibility determination, it is clear that Petitioner's claim is wholly unsupported, and therefore the claim must fail.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence, especially with an experienced criminal defense attorney. Here, based on the testimony at the evidentiary hearing, Ms. Hanania's performance was not deficient.

At the evidentiary hearing, Ms. Hanania testified:

> My understanding of that was that Mr. Prosser was known to Corporal Ward, that he had previously arrested him, and that that charge had later been dropped. Mr. Prosser's belief was that Corporal Ward had an animosity against him based on that prior arrest that was then dropped and that -- that this was a motivation for Corporal Ward to then fabricate his alleged -- Mr. Prosser's statements to Corporal Ward. However, I questioned Corporal Ward in deposition in reference to this matter. He indicated that his interaction with Mr. Prosser during the investigation of the case was very cordial, that Mr. --
>
> . . . .
>
> Yes. That it was cordial, that Mr. Prosser was cooperative, that there weren't any problems between them, and Mr. Prosser had elected not to testify in this case so the jury was not going to hear about any prior record or any prior run-ins with the police at all, and based on the fact that there was nothing to corroborate this idea that there was any personal animosity between Corporal Ward and Mr. Prosser and the fact that the jury would then get to hear that he had been arrested and had contact and was well known to police through this testimony. If we brought it out, it was not something that I thought we were going to gain any advantage from and

> instead may actually hurt Mr. Prosser's chances.
>
> . . . .
>
> No, because we specifically discussed the fact that one of the benefits to him not testifying, if that was his decision, was that the jury wasn't going to hear about any prior problems with the police or any prior arrests or any prior convictions.[10]

EH Tr. at 126-27.

Petitioner testified, at the evidentiary hearing, that Ms. Hanania did not want the jury to know about his prior arrest for battery upon a law enforcement officer (Corporal Ward), which was eventually dropped by the State. Id. at 102-04. He stated that Ms. Hanania told him "it would be best in my behalf that we didn't" bring up the fact that Corporal Ward had arrested him and that the case was later dropped. Id. at 102. Clearly, Ms. Hanania opined that the benefit of impeaching Corporal Ward was far outweighed by the prejudice of having the jury learn of Petitioner's prior criminal record.[11] While aware of the value of impeachment evidence, she made a reasonable decision not to use it because it may have led to damaging information about Petitioner's past criminal record.

---

[10] At the evidentiary hearing, Petitioner testified that he had been previously convicted of sale of cocaine and robbery. EH Tr. at 103; see Ex. A at 15.

[11] See Tr. at 291-92 (regarding Ms. Hanania's objection to Ward's potential testimony that he had prior contact with Petitioner through police investigations or a prior arrest).

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided.  Thus, the ineffectiveness claim is without merit.

### D. Grounds Four and Five

As ground four, Petitioner contends that the trial court illegally enhanced his conviction for robbery with a mask to a first degree felony by use of a misdemeanor statute.  He states that the statute that the court relied upon to reclassify the offense of robbery with a mask to a first degree felony was not a reclassification statute.  Thus, he seeks relief based upon the assertion that the sentence imposed violated his constitutional rights.

As ground five, Petitioner asserts that the sentence imposed constitutes an illegal sentence and should be vacated for lack of proper notice.  Specifically, he contends that the State's filing of three notices of intent to seek habitualization was the equivalent of a shotgun notice that encompassed all sentencing schemes and thus he had no notice of the precise sentencing enhancement being sought by the State.  Based on Petitioner's assertion in his Reply (Doc. #13), it appears that he now concedes

the issue, which has been clarified by Florida law.[12]  Reply at 13.
He notes that the law he initially relied upon to support his
position has once again changed.  <u>Id</u>.

As acknowledged by the parties, Petitioner raised the above-
described claims (grounds four and five) in his Motion to Correct
Illegal Sentence pursuant to Fla. R. Crim. P. 3.800(a).  Ex. X.  In
denying the motion, the court stated in pertinent part:

> [T]he Defendant raises two grounds for relief.
> In ground one, the Defendant claims that his
> offense was improperly reclassified and that
> he was improperly convicted of an offense that
> was never charged and properly tried. To the
> extent that the Defendant challenges the
> reclassification of his offense, the claim is
> without merit. The Defendant concedes that he
> was convicted of Unarmed Robbery with a
> Concealed Identity, a felony of the second
> degree, which can be reclassified as a felony
> of the first degree under Section 775.0845,
> Florida Statutes (1997). Section 775.0845
> states:
>
>> The felony or misdemeanor degree of
>> any criminal offense, other than a
>> violation of ss. 876.12-876.15,
>> shall be reclassified to the next
>> higher degree as provided in this
>> section if, while committing the
>> offense, the offender was wearing a
>> hood, mask, or other device that
>> concealed his or her identity. . . .

---

[12] <u>See</u> <u>West v. State</u>, 942 So.2d 958 (Fla. 4th DCA 2006) (per
curiam); <u>Royal v. State</u>, 908 So.2d 1167 (Fla. 2d DCA 2005);
<u>Martinez v. State</u>, 904 So.2d 565 (Fla. 4th DCA 2005) (per curiam),
<u>rev</u>. <u>denied</u>, 939 So.2d 93 (Fla. 2006); <u>Reese v. State</u>, 899 So.2d
428 (Fla. 3d DCA 2005); <u>Washington v. State</u>, 895 So.2d 1141 (Fla.
4th DCA 2005), <u>rev</u>. <u>denied</u>, 931 So.2d 902 (Fla. 2006).

(2)(b) In the case of a felony of the second degree, the offense is reclassified to a felony of the first degree.

However, the Defendant alleges that this Court did not reclassify his offense under Section 775.0845. Instead, the Defendant claims that his offense was reclassified as a felony of the first degree under the wrong statute, Section 876.12, which states:

No person or persons over 16 years of age shall, while wearing any mask, hood, or device whereby any portion of the face is so hidden, concealed, or covered as to conceal the identity of the wearer, enter upon, or be or appear upon any lane, walk, alley, street, road, highway, or other public way in this state.

This Court notes that the inclusion of Section 876.12 on the face of the judgment filed on November 16, 1999, is a scrivener's error.[13]

Footnote: This Court notes that the Office of the Clerk of Court inadvertently included Section 876.12 as an Offense Statute on the front of the judgment filed on November 16, 1999, and the Clerk shall be ordered to correct the scrivener's error.

In addition, this Court notes that the Defendant's offense was properly reclassified under the correct statute. Reclassification attaches at the time the Information is filed, not at the time the conviction is obtained. Cooper v. State, 455 So.2d 588, 589 (Fla. 1st DCA 1984). In the instant case, the Defendant

---

[13] See Ex. I, Judgment, filed November 16, 1999.

was charged by Information[14] with a violation of Section 775.0845, the correct reclassification statute. (Exhibit "E.") Accordingly, there is no merit to the Defendant's claim that his offense was reclassified under the wrong statute.[15]

The Defendant also alleges that he was improperly convicted of an offense that was neither charged nor properly tried, namely the violation of Section 876.12, Florida Statutes (1999). Initially, this Court notes that the Defendant is not seeking to challenge his sentence, but rather his conviction. Accordingly, this challenge cannot be addressed in the context of a Rule 3.800(a) motion. Sanders v. State, 621 So.2d 723 (Fla. 5th DCA 1993); Shaw v. State, 780 So.2d 188 (Fla. 2d DCA 2001). The Defendant's challenge is also procedurally barred from being brought pursuant to Florida Rule of Criminal Procedure 3.850, in that it was filed more than two years after the Defendant's conviction became final. (Exhibit "D.") Assuming the claim were timely, this Court notes that the inclusion of Section 876.12 on the face of the judgment filed on November 16, 1999, is a scrivener's error. Therefore, the Defendant's claim is without merit.

In the second ground for relief, the Defendant claims that his sentence is illegal because the State failed to give proper notice of intent to seek a Habitual Felony Offender

---

[14] See Ex. A at 13-14, Information (citing to Fla. Stat. § 775.0845).

[15] See Wright v. State, 810 So.2d 873 (Fla. 2002) (holding that a defendant's sentence cannot be enhanced under section 775.0845 without evidence establishing that the defendant personally wore a hood, mask or other device that concealed his identity; noting that, while the co-defendants had worn masks, the State conceded that Wright did not wear a mask during the commission of the robbery or attempted carjacking); Ex. A at 50, Verdict (finding that Petitioner Prosser, while committing the offense, wore a hood, mask or other device that concealed his identity).

sentence. The Defendant argues that he was
served with "shotgun" notice when, on August
13, 1997, the State filed three notices of
intent to classify the Defendant as [a]
Habitual Felony Offender, Career Criminal, and
Habitual Violent Felony Offender. (Exhibit
"F.")[16] According to the Defendant, the
filing of the three notices is the equivalent
of filing no notice at all, since "it is
difficult to imagine how the defendant [*sic*]
or even counsel could have been expected to
prepare for sentencing without knowing what
sentence needs to be defended against."
(Defendant's Motion at 6.) The Defendant's
claim is without merit. The filing of several
notices of intent to seek an enhanced sentence
gives the Defendant all the notice necessary
to prepare for sentencing. <u>Washington v.
State</u>, 895 So.2d 1141, 1143 (Fla. 4th DCA
2005); <u>Royal v. State</u>, 908 So.2d 1167 (Fla. 2d
DCA 2005); <u>Martinez v. State</u>, 904 So.2d 565
(Fla. 4th DCA 2005); <u>Reese v. State</u>, 899 So.2d
428 (Fla. 3d DCA 2005). One of the notices
filed on August 13, 1997, informed the
Defendant that the State would seek to
classify him as a Habitual Felony Offender,
specified the prior offenses on which the
State would rely, and also specified the
sentence that the State would seek. (Exhibit
"F.")[17] Following the trial, the Defendant
was sentenced as a Habitual Felony Offender to
a term of imprisonment that did not exceed the
sentence specified in the notice of intent.
(Exhibits "F" and "C.") Therefore, the
Defendant had all the notice necessary to
prepare for sentencing. <u>See Washington</u>, 895
So.2d at 1143. Accordingly, the Defendant's
claim is without merit.

---

[16] <u>See</u> Ex. A at 15, 16, 17 (Notice of Intent to Classify
Defendant as a Habitual Felony Offender, Notice of Intent to
Prosecute Defendant as a Career Criminal and Notice of Intent to
Classify Defendant as a Habitual Violent Felony Offender).

[17] <u>See</u> Ex. A at 15, Notice of Intent to Classify Defendant as
a Habitual Felony Offender.

Based on the above, it is:

**ORDERED AND ADJUDGED** that the Defendant's Construed Motions to Correct Illegal Sentence are **DENIED**. The Clerk of this Court shall file an Amended/Corrected Judgment and Sentencing Order correcting the scrivener's error to reflect that the Defendant was not convicted for a violation of Section 876.12. The Clerk shall send a certified copy of the Amended/Corrected Judgment and Sentence Order to the Department of Corrections.

Ex. Y at 2-5.

Respondents contend that Petitioner has raised issues of purely state law that are not cognizable on federal habeas review. Response at 16-17, 19. The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[18] Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991). "Federal habeas relief is unavailable 'for errors of state law.'" Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

The Eleventh Circuit has found that it is well established that federal courts cannot review a state's failure to adhere to its own sentencing procedures.

---

[18] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

> [W]e consistently have held that federal
> courts can not review a state's alleged
> failure to adhere to its own sentencing
> procedures. <u>Jones v. Estelle</u>, 622 F.2d 124,
> 126 (5th Cir.), <u>cert</u>. <u>denied</u>, 449 U.S. 996,
> 101 S.Ct. 537, 66 L.Ed.2d 295 (1980); <u>Nichols</u>
> <u>v. Estelle</u>, 556 F.2d 1330, 1331 (5th Cir.
> 1977), <u>cert</u>. <u>denied</u>, 434 U.S. 1020, 98 S.Ct.
> 744, 54 L.Ed.2d 767 (1978); <u>Willeford v.</u>
> <u>Estelle</u>, 538 F.2d 1194, 1196-98 (5th Cir.
> 1976). This limitation on federal habeas
> review is of equal force when a petition,
> which actually involves state law issues, is
> "couched in terms of equal protection and due
> process." <u>Willeford</u>, 538 F.2d at 1198.

<u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988), <u>cert</u>.
<u>denied</u>, 531 U.S. 1170 (2001).

The federal habeas corpus court will be bound by the Florida
court's interpretation of its own laws unless that interpretation
breaches a federal constitutional mandate. <u>McCoy v. Newsome</u>, 953
F.2d 1252, 1264 (11th Cir.) (per curiam), <u>cert</u>. <u>denied</u>, 504 U.S.
944 (1992). As succinctly stated by the Eleventh Circuit:

> A state's interpretation of its own laws or
> rules provides no basis for federal habeas
> corpus relief, since no question of a
> constitutional nature is involved. <u>Bronstein</u>
> <u>v. Wainwright</u>, 646 F.2d 1048, 1050 (5th Cir.
> Unit B June 1981). State courts are the
> ultimate expositors of their own state's laws,
> and federal courts entertaining petitions for
> writs of habeas corpus are bound by the
> construction placed on a state's criminal
> statutes by the courts of the state except in
> extreme cases. <u>Mendiola v. Estelle</u>, 635 F.2d
> 487, 489 (5th Cir. Unit A 1981).

<u>McCullough v. Singletary</u>, 967 F.2d 530, 535-36 (11th Cir. 1992),
<u>cert</u>. <u>denied</u>, 507 U.S. 975, <u>reh'q</u> <u>denied</u>, 507 U.S. 1046 (1993).

30

In sum, Petitioner's claims present issues of state law that are not cognizable on federal habeas review. Accordingly, Petitioner is not entitled to relief on the basis of these claims.

Further, as noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claims were rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions.

Therefore, these grounds should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## VII. Conclusion

Any other claims not specifically addressed are found to be without merit. Accordingly, for all of the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is

**DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the

Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of

December, 2008.


TIMOTHY J. CORRIGAN
United States District Judge

sc 11/19
c:
Larry Prosser
Ass't Attorney General